Anthony FUCHSGRUBER, Cynthia Fuchsgruber, Aurora Health Care, Inc., Lewis Sullivan, Secretary of HHS and United States Attorney Melvin Washington, United States Department of Justice, Plaintiffs-Respondents,

v.

CUSTOM ACCESSORIES, INC. and Zurich-American Insurance Company, Defendants-Appellants,

CHINA INTERNATIONAL AERO-TECHNOLOGY IMPORT AND EXPORT CORPORATION, The Whitlock Corporation, ABC Insurance Company, The Travelers Insurance Company and Compcare Health Services Insurance Corporation, Defendants.

Supreme Court

*No. 98–2419. Oral argument January 30, 2001.—Decided July 2, 2001.*

2001 WI 81

(Also reported in 628 N.W.2d 833.)

For the defendants-appellants there were briefs by *Stanley J. Lowe* and *White & Lowe*, Waukesha, and oral argument by *Stanley J. Lowe*.

For the plaintiffs-respondents there was a brief by *Michael W. Fleming* and *Law Offices of Michael W. Fleming, S.C.*, Milwaukee, and oral argument by *Michael W. Fleming*.

An amicus curiae brief was filed by *William C. Gleisner, III*, and *Law Offices of William C. Gleisner*, Milwaukee, and *Rhonda L. Lanford* and *Habush, Habush, Davis & Rottier, S.C.*, Madison, and oral argument by *Lynn R. Laufenberg* and *Laufenberg Law Offices S.C.*, West Allis, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. DIANE S. SYKES, J. The question in this case is whether the 1995 amendment to the compara-

tive negligence statute, Wis. Stat. § 895.045(1) (1999–2000),[1] applies to strict product liability actions. The answer is no.

¶ 2.   Strict liability for injuries caused by defective and unreasonably dangerous products, as adopted by this court in *Dippel v. Sciano*, 37 Wis. 2d 443, 155 N.W.2d 55 (1967), is liability in tort, not liability for negligence. The *Dippel* adaptation of the comparative negligence statute to product liability theory was a conceptual expedient intended to ensure the availability of the defense of contributory negligence in the newly-recognized tort doctrine of strict product liability.

¶ 3.   Although *Dippel* analogized strict product liability to negligence per se, it did not establish the tort as a species of negligence such that the comparative negligence statute applies to require a comparison of the plaintiff's negligence to the defendant's, as in an ordinary negligence action. Rather, the comparison in a product liability action is plaintiff-to-product, and secondarily, in multiple defendant cases, the defendants to each other, for purposes of contribution. As such, the 1995 amendment to the comparative negligence statute—codifying the requirement that the negligence of the plaintiff is compared against the separate rather than the combined negligence of the defendants, and modifying joint and several liability in negligence cases—does not apply to strict product liability actions.[2]

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[2] Fuchsgruber also argues that if Wis. Stat. § 895.045(1), as amended by 1995 Wis. Act 17, § 1, applies to strict product liability actions, then its retroactive application to this case is unconstitutional. We address the constitutionality of retroactive application of Wis. Stat. § 895.045(1) in a case also

¶ 4.  Anthony Fuchsgruber purchased a Model 58887 Hydraulic Jack at the Whitlock Auto Parts store in St. Francis, Wisconsin. The jack was manufactured by China International Aero-Technology Import and Export Corporation, which sold the jack to Custom Accessories, Inc., which in turn sold it to Whitlock. The jack had originally been shipped in a shrink-wrapped box with the handle detached. When Fuchsgruber bought it, the box was secured by staples, but no shrink wrap. Some weeks after making the purchase, Fuchsgruber opened the box, grabbed the jack by its handle (which was now attached), and attempted to lift it out of the box. The handle broke, injuring him.

¶ 5.  Fuchsgruber sued China International, Custom Accessories and Whitlock (the manufacturer, distributor, and retailer, respectively). He alleged theories of negligence and strict product liability. He was unable, however, to obtain service of process on China International, and Whitlock had previously filed for bankruptcy. Custom Accessories and its insurer, therefore, were the only viable defendants in the case.

¶ 6.  Fuchsgruber had the jack examined by an engineering expert who concluded that the handle broke because of a manufacturing defect. The expert did not criticize the design of the jack, its packaging, or the written materials that accompanied it, but did say it would have been better to ship the jack with the handle detached rather than attached.

---

mandated today, *Matthies v. Positive Safety Manufacturing Co.*, 2001 WI 82, 244 Wis. 2d 720, 628 N.W.2d 842. In *Matthies*, we hold that retroactive application of Wis. Stat. § 895.045(1) is unconstitutional. We conclude here that the amended statute does not apply to Fuchsgruber's strict product liability claim.

¶ 7. Custom Accessories moved for summary judgment, claiming that the 1995 amendment to the comparative negligence statute, Wis. Stat. § 895.045(1), required dismissal. Custom Accessories argued that the new statute required comparison of Fuchsgruber's contributory negligence separately against each defendant in the chain of distribution, rather than against the product, as is usually the case in product liability actions. Further, Custom Accessories argued that, based upon Fuchsgruber's expert's opinion, no reasonable jury could possibly find that it was more than 51 percent causally negligent, and so the new statute's elimination of joint and several liability for defendants found less than 51 percent negligent required dismissal.

¶ 8. Fuchsgruber argued that the 1995 amendment to the comparative negligence statute did not apply to strict product liability claims. The Milwaukee County Circuit Court, the Honorable Lee E. Wells, agreed, and denied the motion for summary judgment. Custom Accessories successfully sought leave to file an interlocutory appeal, and the court of appeals certified the case to us.

II

¶ 9. We review a circuit court's decision on a motion for summary judgment independently, applying the same methodology as the circuit court. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 536, 563 N.W.2d 472 (1997). A motion for summary judgment is granted when the pleadings and supporting materials establish that there is no genuine issue of material fact in dispute and the moving party is enti-

tled to judgment as a matter of law. *Id.* at 537; *see also* Wis. Stat. § 802.08(2).

¶ 10.   The circuit court denied summary judgment, rejecting Custom Accessories' interpretation of the amended Wis. Stat. § 895.045(1). We review questions of statutory interpretation de novo. *Nelson v. McLaughlin,* 211 Wis. 2d 487, 495, 565 N.W.2d 123 (1997). Statutory interpretation begins with—and, absent ambiguity, is confined to—the language of the statute, and that language, with the exception of specifically defined or technical terms, is given its ordinary and accepted meaning. *Id.*

¶ 11.   Custom Accessories argues that the legislature's enactment of 1995 Wis. Act 17, § 1, amending the comparative negligence statute, Wis. Stat. § 895.045(1), brought about a change in the doctrine of strict product liability as adopted by this court in *Dippel.* Custom Accessories contends that the new statute, as applicable to product liability cases, operates to protect from liability a defendant who is merely an "innocent member of the chain of distribution," who did nothing to cause or contribute to the defective condition of the product. We disagree.

¶ 12.   The amended comparative negligence statute provides as follows:

> (1)   COMPARATIVE NEGLIGENCE. Contributory negligence does not bar recovery in an action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if that negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributed to the person

recovering. *The negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent. The liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that person. A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed.*

Wis. Stat. § 895.045 (emphasis added).

¶ 13.   The 1995 amendment had two apparent purposes: 1) the codification of the pre-existing requirement in negligence actions that, where there are multiple defendants, a plaintiff's negligence is compared against the separate rather than the combined negligence of the defendants for purposes of determining liability;[3] and 2) the modification of joint and several liability. As to the latter, under the new statute, only a defendant found 51 percent or more causally negligent can be jointly and severally liable for a plaintiff's total damages (adjusted for any contributory negligence). The liability of a defendant whose causal negligence is less than 51 percent is limited to the percentage of causal negligence attributed to that defendant.

¶ 14.   On the face of it, there is nothing in the language of the statutory amendment to indicate that it was intended to work a change in product liability law, as distinct from ordinary negligence law. *Dippel* adopted the rule of strict liability as set forth in the Restatement (Second) of Torts § 402(A) (1965) for use in product liability cases in this state. Under *Dippel*,

[3] *See Reiter v. Dyken*, 95 Wis. 2d 461, 469–74, 290 N.W.2d 510 (1980).

pursuant to § 402(A), a plaintiff alleging a claim for strict product liability must prove the following five elements:

(1)    that the product was in defective condition when it left the possession or control of the seller,

(2)    that it was unreasonably dangerous to the user or consumer,

(3)    that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages,

(4)    that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and

(5)    that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it.

*Dippel*, 37 Wis. 2d at 460.

¶ 15. Strict product liability theory allows recovery where, although there is no proof of specific acts of negligence on the part of the seller, the "product was in a defective condition at the time it reached the hands of the ultimate consumer." *Greiten v. La Dow*, 70 Wis. 2d 589, 603, 235 N.W.2d 677 (1975). The plaintiff has the burden of proving the *Dippel* elements, and if he does, all sellers in the chain of distribution—manufacturer, distributor, retailer—are strictly liable to the plaintiff, although they may have contribution rights against each other.

¶ 16.   Strict liability was justified because "the seller is in the paramount position to distribute the costs of the risks created by the defective product," by purchasing insurance or by passing the cost on to the consumer in the price of the product. *Dippel*, 37 Wis. 2d at 450. Further, "the consumer. . . .has the right to rely on the apparent safety of the product and. . .it is the seller in the first instance who creates the risk by placing the defective product on the market." *Id.* at 450–51. Also, "where the manufacturer is concerned. . .the manufacturer has the greatest ability to control the risk created by his product since he may initiate or adopt inspection and quality control measures thereby preventing defective products from reaching the consumer." *Id.* at 451. Finally, "the imposition of strict liability avoids circuity of action. In a single suit the plaintiff may proceed against all or the most affluent member in the distributive chain." *Id.*

¶ 17.   Prior to *Dippel*, product liability actions generally resided in the field of warranty, and were therefore subject to various contract defenses; the adoption of the Restatement (Second) of Torts § 402A planted them solidly in the realm of tort, although not as negligence actions. "From the plaintiff's point of view the most beneficial aspect of the rule is that it relieves him of proving specific acts of negligence and protects him from the defenses of notice of breach, disclaimer, and lack of privity in the implied warranty concepts of sales and contracts." *Dippel*, 37 Wis. 2d at 460.

■

¶ 18.   Strict liability, however, was not intended to be absolute liability, nor did it make sellers insurers. *Id.* at 459–60. *Dippel* made it clear that the defense of contributory negligence was available, and cited in a

footnote to the contributory negligence statute, Wis. Stat. § 895.045. *Dippel*, 37 Wis. 2d at 460–61, n.10. In doing so, however, the *Dippel* court recognized the conceptual difficulty of interposing a negligence defense against a cause of action that is not based upon negligence, and reconciled it in this way:

> It might be contended that the strict liability of the seller of a defective product is not negligence and therefore cannot be compared with the contributory negligence of the plaintiff. The liability imposed is not grounded upon a failure to exercise ordinary care with its necessary element of foreseeability; *it is much more akin to negligence per se.*

*Id.* at 461 (emphasis added).

¶ 19.  This language in *Dippel* analogizing strict product liability to negligence per se for purposes of the defense of contributory negligence did not establish the newly-recognized cause of action as a species of negligence. It did not, therefore, suggest the application of the comparative negligence statute in product liability cases in exactly the same manner as in ordinary negligence actions.

¶ 20.  Indeed, in strict product liability cases under *Dippel*, the jury is asked to apportion the extent to which the plaintiff's injuries were attributable to his own contributory negligence as compared to the product's defectiveness. *See* Wis JI—Civil 3290. That is, the initial comparison is plaintiff-against-product, not plaintiff-against-defendants. An entirely separate question asks the jury to apportion liability for contribution among the various defendants—manufacturer, assembler, dealer, seller—responsible for placing the defective product in the stream of commerce. *Id.* The requirement of a separate verdict question on the issue

of contribution among defendants was established by this court in the wake of *Dippel*, in *City of Franklin v. Badger Ford Truck Sales*, 58 Wis. 2d 641, 207 N.W.2d 866 (1973).

¶ 21.  We emphasize again that the "negligence per se" language in *Dippel* did not establish strict product liability as a device for imposing liability for negligence. *Greiten*, 70 Wis. 2d at 603 (Heffernan, J., concurring). In his *Greiten* concurrence,[4] Justice Nathan S. Heffernan explained the *Dippel* "negligence per se" language in this way:

> Sec. 402 A   does not impose liability for negligence at all. It imposes liability for tort, and it is only for the purposes of fitting the *Dippel* rationale into the framework of our comparative negligence statute that we refer to it as negligence, albeit a legal-policy type of negligence per se. In the *Dippel* type of case, the burden of proof that the product was in a defective condition at the time it reached the hands of the ultimate consumer is upon the plaintiff; and in the event he meets that burden of proof, there is liability. It is not necessary to show any specific acts of negligence. It is not necessary to show duty in terms of foreseeability. It is enough to prove, irrespective of due care, that, because of its dangerously defective nature, the product caused harm.

*Id.* at 603 (Heffernan, J., concurring).

---

[4] Justice Heffernan's concurrence in *Greiten v. La Dow*, 70 Wis. 2d 589, 599, 235 N.W.2d 677 (1975), was joined by three other justices and was therefore a majority opinion of the court, and has been treated as such. *Howes v. Deere & Co.*, 71 Wis. 2d 268, 274, 238 N.W.2d 76 (1976); *St. Clare Hosp. of Monroe v. Schmidt, Garden, Erickson, Inc.*, 148 Wis. 2d 750, 758, 437 N.W.2d 228, n.3 (Ct. App. 1989).

¶ 22.    Drawing on Justice Heffernan's *Greiten* concurrence, Court of Appeals Judge William Eich has offered this analysis:

> The occasional, sometimes unexplained, references to negligence *per se* in strict liability cases, and the jury instruction and verdict forms which ask jurors in strict liability cases to take a leap of logic, if not faith, by treating the "defective condition" of a product as "negligence," have created some confusion in the area, as the supreme court itself has recognized. *Howes v. Deere & Company*, 71 Wis. 2d 268, 274, 238 N.W.2d 76, 80 (1976). We are satisfied, however, that the occasional references to negligence *per se* in products liability cases and in the pattern jury instructions do not. . .inseparably wed the two theories of liability in all circumstances. Indeed, comparing strict liability and negligence "is. . .comparing apples and oranges, for [strict liability] is based upon the public-policy premise that a seller is socially responsible for what he [or she] puts into the stream of commerce irrespective of [the] degree of care. . . . On the other hand, negligence is based upon a theory of fault. We look in the ordinary negligence case not. . .to the result of the defendant's action, but rather to his [or her] conduct in attaining that result." *Greiten*, 70 Wis. 2d at 604, 235 N.W.2d at 686.

*St. Clare Hosp. of Monroe v. Schmidt, Garden, Erickson, Inc.*, 148 Wis. 2d 750, 758–59, 437 N.W.2d 228 (Ct. App. 1989).

¶ 23.    We do not consider a seller who is liable under *Dippel* to be guilty of negligence at all. Despite the somewhat misleading language of the cases, jury instruction and special verdict form, the defective con-

dition of the product does not constitute "negligence" on the part of the seller. There is no defendant "negligence" to be apportioned against the plaintiff in a strict product liability action, either separately or in the aggregate with other defendants. There may be contribution rights to be determined, but that is always a separate question and has no bearing on the plaintiff's recovery, which is reduced only to the extent of his own negligent conduct.

¶ 24.   In strict product liability actions, "[t]he 'act' to which [the seller's] responsibility attaches is not an act of negligence. If indeed it is an act at all, it is simply the act of placing or maintaining a defective product in the stream of commerce." *Id.* at 757–58. Therefore, the comparison in strict product liability actions is not a comparison of one party's conduct against another, but, rather, a comparison of the extent to which the plaintiff's injuries were attributable to his own contributory negligence as against the product's defective condition.

¶ 25.   It is axiomatic that a statute does not abrogate a rule of common law unless the abrogation is clearly expressed and leaves no doubt of the legislature's intent. *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 74, 307 N.W.2d 256, 266 (1981); *NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 836, 520 N.W.2d 93 (Ct. App. 1994). Statutes in derogation of the common law are strictly construed. *Maxey v. Redev. Auth. of Racine*, 94 Wis. 2d 375, 399, 288 N.W.2d 794 (1980). A statute does not change the common law unless the legislative purpose to do so is clearly expressed in the language of the statute. *Id.* To accomplish a change in the common law, the language of the statute must be clear, unambiguous, and peremptory. *Id.*

¶ 26. The language of the new comparative negligence statute clearly expresses a legislative purpose to codify the common law rule requiring a plaintiff's contributory negligence to be compared against the separate rather than the aggregate negligence of the defendants. The language of the new statute also clearly expresses a legislative purpose to partially eliminate joint and several liability in negligence actions. The new statute does not, however, explicitly or even implicitly suggest a legislative purpose to change the common law of strict product liability.

¶ 27. As we have emphasized, strict product liability is not negligence; the concept of contributory negligence is simply borrowed from negligence law and transplanted in product liability theory for purposes of making the defense available to sellers. Neither the availability of this defense, nor the availability of contribution rights among defendants, means that strict product liability is actually negligence for all intents and purposes, including application of the comparative negligence statute. The comparative negligence statute has never fully applied to strict product liability actions in the first place; therefore, the amendment to it, which is silent on the subject, does not abrogate or alter the common law of strict product liability.

¶ 28. The Wisconsin Civil Jury Instructions Committee has reached essentially the same conclusion, and declined to adapt the jury instructions and special verdict form in the manner suggested by Custom Accessories:

> In October 1998, the Committee reviewed this special verdict format suggested above to determine if any change was necessary due to the revision to

Wis. Stat. § 895.045 which modified common law on joint and several liability. In particular, the Committee analyzed the language in the statute that the plaintiff's negligence "shall be measured separately" against each defendant. Some members of the Bar have suggested this new statutory language eliminates the traditional "person versus product" comparison on which this verdict is premised. The Committee believes that the plaintiff versus the product approach is still the proper approach in applying comparative negligence in a products liability case involving several defendants in the chain of distribution of the product. *See City of Franklin v. Badger Ford Truck Sales,* 58 Wis. 2d 641, 207 N.W.2d 866 (1973).

Based on the Committee's review of both subsections to § 895.045 and the clear holding in the *City of Franklin, supra,* decision as to the allocation of comparative negligence in a products liability case with multiple product sellers, the Committee concluded that the special verdict proposed above is correct and does not require revision.

Wis JI—Civil 3290 comment at 3-4 (1998).

¶ 29. To interpret the new comparative negligence statute as Custom Accessories suggests would bring about a sea change in strict product liability law, shifting burdens and altering the nature of the proofs, indeed, transforming the very nature of product liability from strict liability to garden-variety negligence. While the 1995 amendment clearly ushered in a significant development in negligence law, there is nothing in the language of the new statute that even hints at a legislative purpose to accomplish such a sweeping change in the common law of strict product liability in this state.

¶ 30.   We conclude, therefore, that the 1995 amendment to the comparative negligence statute, Wis. Stat. § 895.045(1), does not apply to strict product liability claims. The traditional plaintiff-to-product comparison, followed by an apportionment of contribution rights among defendants, remains the law in the field of product liability. Accordingly, we affirm the circuit court's denial of Custom Accessories' motion for summary judgment motion.

*By the Court.*—The order of the Milwaukee County Circuit Court is affirmed.

¶ 31.   DAVID T. PROSSER, J. did not participate.